## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

AUDREY R. LUGO, §
    *Plaintiff*, §
§
v. §   Case No. _____
§   Jury
§
SMITH COUNTY, TEXAS, §
    *Defendant*. §
§

## COMPLAINT

Plaintiff Audrey R. Lugo ("Lugo") sues her former employer, Defendant Smith County, Texas ("County"), for constructively discharging her in violation of sections 703 and 704 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e – 2 & 3 ("Title VII").

**I.**    **Parties, Jurisdiction and Venue**

1.    Lugo is an individual. She is a citizen and resident of Smith County, Texas.

    a.    Lugo is a former employee of the County as the word "employee" is defined in 42 U.S.C. § 2000e(f).

2.    The County is and was at all times relevant to this action a corporate governmental entity located in the Tyler Division of the U.S. District Court for the Eastern District of Texas.

    a.    The County is a former employer of Lugo as the word "employer" is defined in 42 U.S.C. § 2000e(b).

    b.    The County employed more than 500 individuals in Years 2020 and 2021.

    **c.**    **The County can be served with process through its County Judge, Neal J. Franklin, located at 200 East Ferguson, Suite 100, Tyler, Texas 75702, tel. 903.590.4625.**

    **(i)**    **David Iglesias, Esq., has agreed to accept service of process on**

**Complaint**        **Page 1**

**behalf of the County. He is located at 605 Chase Drive, Suite 8, Tyler, Texas 75701.**

3.      This Court has original, subject-matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 & 1343.

4.      This Court has *in personam* jurisdiction over the County because the County conducts business in Texas, Lugo's claims all arose in Texas, and the County is amenable to service by this Court.

5.      Venue is proper in this judicial district and division pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to Lugo's claims occurred here.

## II.      Material Facts

6.      The County previously employed Lugo.

7.      During Lugo's employment with the County, the County assigned Lugo to the Smith County Sheriff's Office ("SCSO").

8.      The County previously assigned Lugo to the following work unit – Smith County Sheriff's Office ("SCSO") – at all times during Lugo's employment with the County.

9.      According to the County's records, Lugo's gender is female.

10.      On February 26, 2017, the County employed Lugo and assigned her to the SCSO.

11.      On February 26, 2017, the County employed Lugo as a Peace Officer.

12.      In April 2018, the County assigned Lugo to SCSO's Criminal Investigation Division.

13.      In April 2018, the County assigned Lugo to SCSO's Criminal Investigation Division as a Detective.

14.      In 2018, the County's SCSO was producing documents in the ordinary course of

**Complaint**                                                                                   **Page 2**

its business that it called a *Performance Evaluation Report*.

        a.     This Performance Evaluation Report included a "trait checklist."

15.     On October 8, 2018, the SCSO's *Performance Evaluation Report* for Lugo showed that Lugo met or exceeded expectations for all the listed traits.

16.     On February 28, 2020, the SCSO's *Performance Evaluation Report* for Lugo showed that Lugo met or exceeded expectations for all the listed traits.

17.     In March 2020, the County assigned Lugo to SCSO's Children Advocacy Center Unit.

18.     In March 2020, the County assigned Lugo to SCSO's Children Advocacy Center Unit as a Detective.

19.     On April 19, 2020, the Smith County Sheriff's Office employed a certain Kenneth Bond.

20.     According to the County's records, Bond's gender is male.

21.     On April 19, 2020, the County assigned Bond to SCSO's Criminal Investigation Division.

22.     On April 19, 2020, Bond held the rank of "Captain."

23.     On April 19, 2020, Captain Bond was empowered by the County to take tangible employment actions against Lugo.

24.     On April 19, 2020, Captain Bond was empowered by the County to effect a significant change in Lugo's employment status, *e.g.*, promoting her (or not), reassigning her with significantly different responsibilities (or not), or causing a significant change in her benefits (or not).

25.     On April 19, 2020, Captain Bond was Lugo's supervisor.

26.     In May 2020, Captain Bond tried to remove Lugo from SCSO's Children Advocacy Center Unit and assign her to SCSO's Property Crimes Unit.

27.     In May 2020, Captain Bond tried to remove Lugo, against her stated wishes, from SCSO' Children Advocacy Center Unit and assign her to SCSO's Property Crimes Unit.

28.     On May 19, 2020, the SCSO's *Performance Evaluation Report* for Lugo showed that Lugo met or exceeded expectations and needed improvement with performance of duties – specifically, "work on interviews with senior Detectives. Maintain good attitude to create positive working environment."

29.     In May 2020, the County denied Captain Bond's request to remove Lugo from SCSO's Children Advocacy Center Unit.

30.     In May 2020, the County employed a certain James Jackson.

31.     In May 2020, the County assigned a certain James Jackson to the SCSO.

32.     In May 2020, the County assigned a certain James Jackson to the SCSO as a Chief Deputy.

33.     In May 2020, President of the Fraternal Order of Police, Christi McDowell, complained verbally to Chief Jackson about Captain Bond's treatment of female subordinate employees.

34.     In May 2020, President of the Fraternal Order of Police, Christi McDowell, on behalf of Lugo, complained verbally to Chief Jackson about Captain Bond's treatment of female subordinate employees.

35.     In May 2020, President of the Fraternal Order of Police, Christi McDowell, on behalf of Lugo, complained verbally to Chief Jackson about Captain Bond's treatment of female subordinate employees, which Lugo perceived was harsher than his treatment of male subordinate

employees.

36.     On August 18, 2020, the SCSO's *Performance Evaluation Report* for Lugo showed that Lugo met or exceeded expectations for all the listed traits.

37.     On March 30, 2021, the County reassigned Lugo to SCSO's Property Unit.

38.     On March 30, 2021, the County reassigned Lugo to SCSO's Property Unit, where she held the title of Detective.

39.     On March 30, 2021, the County reassigned Lugo to SCSO's Property Unit at the request of Captain Bond.

40.     From March 30, 2021, to the end of her employment with the County, Lugo worked in SCSO's Property Unit.

41.     From March 30, 2021, to the end of her employment with the County, Lugo held the title of Detective.

42.     On April 19, 2021, the County employed a certain Jason Railsback.

        a.      According to the County's records, Railsback's gender is male.

43.     On April 19, 2021, Railsback was assigned to the SCSO.

44.     On April 19, 2021, Railsback held the rank of Sergeant.

45.     On April 19, 2021, Sergeant Railsback maintained a supervisory role over Lugo.

46.     On April 19, 2021, Captain Bond drafted and submitted a personnel complaint against Lugo.

47.     On April 19, 2021, Captain Bond drafted and submitted a personnel complaint against Lugo, alleging that Lugo "intentionally and/or knowingly recorded a counseling session with Sergeant Jason Railsback and Captain Kenneth Bond using her personal cellphone."

48.     On April 19, 2021, the County employed a certain Larry Christian.

a.    According to the County's records, Christian's gender is male.

49.    On April 19, 2021, Christian was assigned to the SCSO.

50.    On April 19, 2021, Christian held the rank of Sergeant.

51.    On April 19, 2021, Sergeant Christian was assigned to investigate the personnel complaint drafted and submitted by Captain Bond against Lugo.

52.    On May 28, 2021, there were no findings sustaining Lugo of any policy violations.

53.    On May 28, 2021, Captain Bond's personnel complaint against Lugo was still under investigation by Sergeant Christian.

54.    On May 28, 2021, while Captain Bond's personnel complaint against Lugo was still under investigation by Sergeant Christian, Captain Bond drafted and submitted a letter to Chief Jackson alleging that a finding of misconduct by Lugo based upon Captain Bond's complaint lodged on April 19, 2021 had already been **sustained**.

a.    Captain Bond's allegation that the complaint referenced in this paragraph had already been sustained is false.

55.    On May 28, 2021, while Captain Bond's personnel complaint against Lugo was still under investigation by Sergeant Christian, Captain Bond drafted and submitted a letter to Chief Jackson alleging that a finding of "untruthfulness" had already been **sustained**.

a.    Captain Bond's allegation that the complaint referenced in this paragraph that a finding of "untruthfulness" had already been sustained is false.

56.    Captain Bond's letter to Chief Jackson, dated May 28, 2021, cited the Smith County District Attorney's Office-Exculpatory information and impeachment policy for reporting "sustained" disciplinary allegations involving conduct of dishonesty.

57.    However, despite Captain Bond's representations contained in the previous

**Complaint**                                                                                          **Page 6**

paragraph, there were **no findings** at the time sustaining Lugo of any policy violations.

a.      Indeed, as of June 3, 2021, there were **no findings** sustaining Lugo of any policy violations.

b.      To the contrary, as of June 3, 2021, Captain Bond's personnel complaint against Lugo was still under investigation by Sergeant Christian.

58.    Captain Bond drafted and submitted an amended personnel complaint against Lugo. Captain Bond did this on June 3, 2021.

a.      In this letter amending his personnel complaint again Lugo, Captain Bond adds an allegation II.

(i)     In this allegation II, Captain Bond avers that on May 7, 2021, "during an interview regarding Allegation 1 above [recording a counseling session], Detective Audrey Lugo was untruthful when (A) she went into detail by stating that she deleted the covert recordings, when in fact she still had the covert recordings on her phone; (B) she provided the names of two current employees who instructed her to covertly record supervision, when in fact she knew she left out the name of a previous employee . . . ."

59.    The amended personnel complaint against Lugo, referenced in the immediately prior paragraph, is Captain Bond's <u>first</u> accusation of dishonesty against Lugo.

60.    On June 9, 2021, Sergeant Christian drafted and submitted a letter to Chief Jackson. In that letter he sustains Allegation I and Allegation II against Lugo as alleged by Captain Bond.

61.    On June 9, 2021, Chief Jackson drafted and submitted a termination letter to Lugo. The termination letter contains the sustained findings of Allegations I and II as alleged by Captain Bond.

62.    On June 9, 2021, Lugo submitted a letter of resignation to SCSO in lieu of

termination.

63.     Captain Bond's letter, referenced in paragraph 54, had been sent and disseminated The Smith County District Attorney's Office <u>before</u> any complaints against Lugo were sustained.

64.     Captain Bond's letter, referenced in paragraph 54, was transmitted to the Smith County District Attorney's Office <u>before</u> any complaints against Lugo were sustained.

65.     Captain Bond's letter, referenced in paragraph 54, caused Lugo's name to be placed on a "Brady list" for dishonesty with the Smith County District Attorney's Office.

      a.     This was <u>before</u> anyone had submitted any complaint of dishonesty against Lugo.

      b.     This was <u>before</u> any findings against Lugo had been sustained.

66.     Captain Bond's letter, referenced in paragraph 54, which caused Lugo's name to be placed on a "Brady list" for dishonesty with the Smith County District Attorney's Office, effectively ended Lugo's law enforcement career on May 28, 2021.

67.     At no time before May 28, 2021, had any individual empowered with the authority, in whole or in part, as Captain of the Criminal Investigations Division submitted a letter misadvising superiors of sustained findings and citing the Smith County District Attorney's Office-Exculpatory information and impeachment policy.

68.     Before June 9, 2021, other male employees with SCSO had violated the same SCSO policy on prohibited recording as alleged in Captain Bond's complaint as Allegation 1, referenced in paragraph 47.

69.     Before June 9, 2021, other male employees with SCSO had violated the same SCSO policy on prohibited recording, referenced in paragraph 47. However, unlike Lugo --

      a.     SCSO did not fire any of those male employees.

b.      SCSO did not submit correspondence placing them on the Smith County District Attorney's "Brady list."

c.      SCSO did not suspend any of those employees with pay.

d.      SCSO did not demote any of those employees.

e.      SCSO did not give any of those employees any written warning, counseling, or write-up.

70.     The County constructively discharged Lugo.

71.     The County constructively discharged Lugo on June 9, 2021.

72.     The County constructively discharged Lugo on June 9, 2021, effective immediately.

73.     It was Chief Jackson who, on behalf of the County, made the final, ultimate decision to discharge Lugo.

74.     It was Chief Jackson who, by means of written correspondence, informed Lugo she was terminated.

75.     It was Chief Jackson who, by means of written correspondence, dated June 9, 2021, informed Lugo she was terminated.

76.     On August 20, 2021, the U.S. Equal Employment Opportunity Commission ("EEOC") received from Lugo a completed EEOC Form 5, called a *Charge of Discrimination* ("Charge").

77.     At some point after receiving the Charge, EEOC assigned to the Charge the following number – 450-2021-05720.

78.     EEOC had the Charge on file for more than 180 days before preparing the two letters referenced in paragraphs 79 and 80 *infra.*

**Complaint**                                                                                                                **Page 9**

79.     EEOC prepared one letter on September 26, 2022 and titled it *Determination and Notice of Rights*.

80.      On October 18, 2021, EEOC prepared a second letter, this one titled *Dismissal and Notice of Rights Enclosed.*

81.     On October 18, 2021, EEOC enclosed the two letters referenced in paragraphs 79 and 80 *supra* in the same envelope. Using the same metered stamp – it says "October 18, 2022" – EEOC mailed both letters to counsel for Lugo at the time, as well as attorneys for the County, Messrs. Thomas Wilson and David Iglesias.

82.     Lugo has filed this action within ninety (90) calendar days of receipt by her counsel of the letters referenced in paragraphs 79 and 80 *supra.*

83.     As a result of the foregoing conduct by the County, including SCSO, Lugo has sustained substantial financial losses, and she is continuing to sustain such losses.

84.     As a result of the foregoing conduct by the County, including SCSO, Lugo has suffered severe mental anguish, and she is continuing to suffer such anguish.

**COUNT ONE:**
**Title VII; Gender Discrimination; Constructive Discharge**

85.     Lugo re-alleges and incorporates by reference all allegations set forth in paragraphs 6 through 84.

86.     Section 703(a) of Title VII, codified at 42 U.S.C. §2000e-2(a), reads in pertinent part that "[i]t shall be an unlawful employment practice for an employer— (1) … to discharge any individual, or otherwise to discriminate against any individual with respect to [her] … terms, conditions, or privileges of employment, because of such individual's … sex[.]" *See also generally* Fifth Circuit Pattern Jury Instructions (Civil Cases) at 11.6 ("Constructive Discharge").

87.     The County violated section 703(a) when on June 9, 2021, Chief Jackson drafted and submitted a termination letter to Lugo. However, Lugo submitted a letter of resignation in lieu of termination first.

88.     Lugo has satisfied all conditions precedent to the filing of Count One.

89.     Lugo seeks all relief available to her under Title VII. This includes but is not limited to the following: (a) an award of wages and employment benefits in the past – "back pay" – plus wages and employment benefits in the future – "front pay" (if reinstatement is found to be inappropriate) -- and other appropriate equitable relief; (b) compensatory damages in the past, including damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, as well as compensatory damages in the future, including damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses; (c) all interest lawfully available to Lugo; and (d) an award of attorney fees if/when Lugo is found to be a "prevailing party," as well as reimbursement for Lugo's expert witness fees as part of her costs.

**COUNT TWO:**
**Title VII; Retaliation; Constructive Discharge**

90.     Lugo re-alleges and incorporates by reference all allegations set forth in paragraphs 6 through 84.

91.     Section 704(a) of Title VII, codified at 42 U.S.C. §2000e-3(a), reads in pertinent part that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of [its] employees … because [an employee] has opposed any practice made an unlawful employment practice by this title…." *See also generally* Fifth Circuit Pattern Jury Instructions (Civil Cases) at 11.6 ("Constructive Discharge").

92.     The County violated section 704(a) when in response to Lugo's opposition to what she reasonably perceived as illegally sexist treatment by the likes of Captain Bond, Chief Jackson drafted and submitted a termination letter to Lugo on June 9, 2021. However, Lugo submitted a letter of resignation in lieu of termination first.

93.     Lugo has satisfied all conditions precedent to the filing of Count Two.

94.     Lugo seeks all relief available to her under Title VII. This includes but is not limited to the following: (a) an award of wages and employment benefits in the past – "back pay" – plus wages and employment benefits in the future – "front pay" (if reinstatement is found to be inappropriate) -- and other appropriate equitable relief; (b) compensatory damages in the past, including damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, as well as compensatory damages in the future, including damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses; (c) all interest lawfully available to Lugo; and (d) an award of attorney fees if/when Lugo is found to be a "prevailing party," as well as reimbursement for Lugo's expert witness fees as part of her costs.

### Jury Demand

95.     Lugo demands a jury on all issues so triable. FED. R. CIV. P. 38(b)(1).

### Request for Relief

Based on the foregoing, Plaintiff Audrey R. Lugo asks that Defendant Smith County, Texas appear and answer, that Lugo have final judgment against the County as set forth herein, and for all such other and further relief to which Lugo may be justly entitled.

Dated January 16th, 2023.

Respectfully submitted,

By: _____

**JOHN W. GREENSLADE**
*Lead Attorney*
State Bar No. 24068263
John@BGLawTexas.com
**KENNETH M. BIGGS**
State Bar No. 24071983
Kenneth@BGLawTexas.com
**ANNIE J. NORTHCUTT**
State Bar No. 24103465
Annie@BGLawTexas.com
1028 Asher Way Suite 200
Tyler, TX 75703
(903) 405-2686 Telephone
(903) 630-7859 Facsimile
**Attorneys for Plaintiff Audrey Lugo**